FRANK HUGO SALVADOR v. M. FEELEY AND MRS. M. FEELEY, Appellants.

**Contracts for Services:** MEMBERS OF FAMILY. Where plaintiff went to live with defendants when a child and continued to live with them as one of their family after becoming of age, the presumption is that his services were gratuitous, and to recover he must overcome this presumption by showing either an express promise to pay for the services, or that services were rendered and received with the expectation of being paid for.

RULE APPLIED. Plaintiff was brought up by defendants as a member of their family. Defendants told him that they did not expect him to do work for nothing; that he would be paid for all he did; and that on coming of age he would be given a piece of land. At another time they promised him a team and harness when he attained his majority. *Held*, that this did not show an express promise to pay for the service before plaintiff attained his majority, but tended to rebut the presumption that the services were gratuitous.

**Limitation of Actions:** RUNNING OF STATUTE. An agreement made after a person attained his majority, as to his compensation for future services, interrupts the continuity of the services rendered by him before his majority without any express agreement, and an action to recover therefor is barred if not commenced within five years after the agreement.

**Appeal:** ASSIGNMENT OF ERRORS: *Amendment.* An amended abstract presenting additional assignments of error will be considered though filed without leave of the court after appellant had filed his argument, but served though not filed more than ten days before the trial term, where the appellee did not move to strike the amend- ment but after insisting that appellant had no right to file the same proceeds to present his argument upon such amended assign- ments, and it is apparent that the submission of the appeal has not been delayed and that the appellee has not been in any man- ner prejudiced by the filing of the amendment.

MUST ASSIGN REASON. Under Code, 1873, section 3207, and supreme court rules, section 36, requiring assignments of error to point out the errors objected to, an assignment which does not give any reason why the ruling complained-of is erroneous is insufficient.

REVIEW: *Conflicting evidence.* When the evidence as to duress is conflicting, the question is for the jury.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

### MONDAY, MAY 16, 1898.

THE following statement of the issues made by appellants' counsel is conceded to be substantially cor- rect: "Plaintiff originally, on July 10, 1895, filed a peti- tion in three counts, but before trial he dismissed count 2, and on the trial, after resting, dismissed cout 3 thereof, so that the issues are contained in count 1 of plaintiff's petition, the answer of defendants, and the reply of plaintiff. Plaintiff alleges that he has worked for defendants as a farm boy and hand, from March 1, 1884, to March 15, 1895, under an implied contract that he should be paid therefor, and that the reasonable value of such services was nineteen dollars and seventy cents per month. The defendants deny that plaintiff ever rendered them any services

by virtue of an implied contract, but state that when
plaintiff was a boy about ten years old, homeless and
without means of support, they took him to their home,
fed and clothed him, sent him to school, and cared for
him as they would for a son, and that they agreed with
him, when he was about fifteen years of age, that he
should work for them until he was twenty-one years of
age, in consideration of the support already given him
and his board and clothes until he should become of age,
and that they did clothe and support him until he came
of age.     Defendants further claim that the services
alleged to have been rendered in count 1 of plaintiff's
petitions were personal services rendered from month
to month or year to year, and that any cause of action
for such services rendered prior to July 10, 1890, is
barred by the statute of limitations, five years having
elapsed since said services were rendered. Defendants
further claim that after plaintiff came of age they made
a new agreement with him that he should live with
them as long as he might desire, and should receive as
compensation for his services one hundred dollars per
year and his board and clothes, and that they, in 1895,
paid him three hundred dollars thereunder.   They also
state that on January 19, 1895, they had a full settle-
ment with plaintiff of all differences and accounts up
to the date, in writing, under which it was agreed that
defendants should execute to plaintiff a bill of sale of
a team of horses and permit him to cultivate a tract of
land during the year 1895; and they, under this agree-
ment, gave him a team of horses worth two hundred and
fifty dollars, and the use of seventy acres of land during
1895, the rental of which was worth two hundred and
ten dollars.   Defendants make a counterclaim against
plaintiff for these sums and some other items, the total
amounting to eight hundred and twenty-five dollars.
Plaintiff, by way of reply, admits that he signed said

written agreement of settlement, but claims that the same was without consideration, and was secured through duress, on account of threats by defendants of criminal prosecution for the burning of some hay belonging to them. There was no evidence on the trial showing want of consideration for said written settlement, and the court so instructed the jury.", Verdict and judgment were rendered in favor of the plaintiff for eight hundred dollars. Defendants appeal.—*Reversed.*

*C. G. Saunders* and *David E. Stuart* for appellants.

*H. L. Robertson* and *E. E. Aylesworth* for appellee.

GIVEN, J. —I. Appellee questions the sufficiency of the assignments of error as made in the original abstract and the right of appellants to file their additional assignments when they did. Not one of the six assignments of error made in the original abstract "points out the very error objected to," as required by section 3207 of the Code of 1873, section 4136 of the Code, and section 36 of the rules of the supreme court. No reason is given in either assignment why the ruling complained of is claimed to be erroneous. They are general, as that the court erred in giving instructions 1 to $9\frac{1}{2}$, and in refusing to give the instructions asked. Clearly, these assignment are insufficient.

On January 5, 1898, more than ten days before the first day of the trial term, appellant served upon appellee an "additional and amended abstract," setting forth three additional assignments of error, which are sufficiently specific. This additional and amended abstract was filed without leave of court on January 10, 1898, less than ten days before the first day of the trial term, and after appellee's argument had been served and filed. Appellee, in an additional argument,

insists that appellant had no right to file said additional assignments of error after he had filed his argument, without first obtaining leave from the court, and cites *Betts v. City of Glenwood*, 52 Iowa, 124. In that case appellee's motion to strike the amendment to the assignment of errors upon grounds similar to those urged in this case was submitted with the case and sustained. The right to amend on leave granted is recognized, and it is said: "In such a case, the appellee would be entitled to time to present argument thereon." Appellee in this case did not move to strike the amendment to the assignment of errors, but, after insisting that appellant had no right to file the same, proceeds to present his argument upon said amended assignments. In *Hall v. Railway Co.*, 84 Iowa, 311, appellee moved to strike from the files an amendment to the assignment of errors on the ground that it was filed too late, and this court said: "It is permissible to file such amendments in the furtherance of justice,"—citing *Stanley v. Barringer*, 74 Iowa, 37. It is further said: "In this case it does not appear that the submission in this court has been delayed, nor that the appellee had been in any manner prejudiced by the filing of the amendment." The same is true of this case, and we think it should be considered on the amended assignment of error. See *Bunyan v. Loftus*, 90 Iowa, 122; *Buhlman v. Humphrey*, 86 Iowa, 597; *Stanley v. Barringer*, 74 Iowa, 34.

II. The questions argued will be better understood by noting briefly the controlling facts and contentions. There is no dispute but that about August, 1880, the plaintiff, an orphan aged about eleven years, of foreign birth, and without means of support, was in the care of the Reverend Father McMenony, at Council Bluffs, for the purpose of being placed in a

suitable home. About that date defendants took plaintiff to their home on a farm where they resided, and he continued to live with them on said farm, as one of their family, until about March 15, 1895. During all that time the plaintiff was supported and cared for by the defendants, and worked industriously for them on the farm. There is some conflict in the evidence as to the care and support that plaintiff received, and as to the amount and value of the work which he performed, but these contentions only go to the amount that he may be entitled to recover. There is evidence of various conversations between plaintiff and the defendants, before and after he became of age, as to his compensation. It also appears that on January 19, 1895, which was after plaintiff came of age, he executed and acknowledged an instrument, which defendants caused to be recorded, as follows: "This is to certify that M. Feeley and Mrs. M. Feeley have this day made a full, fair, and complete settlement with me for all work that I have done for them, or either of them, to this date, by giving me a team of horses and a set of double farm harness, which are described in a certain bill of sale from them to me of even date herewith, and for which I hereby acknowledge receipt." Plaintiff contends that this instrument was executed without consideration and under duress. The court instructed that it was not without consideration, and submitted the question of duress to the jury, and this is assigned as error. The court also instructed that "the claim of defendants that plaintiff's claim is barred by the statute of limitations is not supported by the evidence." The giving of this instruction is also assigned as error.

III.   Defendant's additional assignments of error are as follows: "(7) The court erred in overruling defendant's motion, made at the conclusion of plaintiff's case in chief, to withdraw from the jury all that part

of plaintiff's cause of action that accrued prior to March 1, 1890, as set out in count 1 of plaintiff's petition, for the reason that the contract under which the alleged services were rendered was not an entirety, and was for personal services, and the cause of action arising thereon is for such period barred by the statute of limitations. (8) The court erred in refusing to give to the jury the instructions (pages 76 and 77, Abstract) asked by the defendants, for the reason that the evidence fails to show that the plaintiff was under duress at the time he executed the settlement in controversy. (9) The court erred in giving to the jury, on its own motion, instruction numbered 9½, for the reason that the evidence showed that all of plaintiff's claim arising prior to March 1, 1890, was barred by the statute of limitation."

The evidence as to the alleged duress is conflicting. If that on behalf of the plaintiff is entitled to greater weight and credit than that on behalf of the defendants, the alleged duress is established. This was a question for the jury, and therefore there was no error in submitting that issue.

VI. We have seen that plaintiff went to live with the defendants about August, 1880, and continued to live with them, as one of their family, until March, 1895, and that he attained his majority April 4, 1890. Having lived with the defendants, as one of their family, the presumption is that his services were gratuitous, and to recover for the services he must overcome that presumption. This he may do by showing "an express promise on defendant's part to make compensation therefor, or such facts or circumstances as will authorize the jury to find that the services, or some part thereof, were rendered in the expectation by the plaintiff of receiving, and by the defendant of making, compensation therefor." See *Resso v. Lehan*, 96 Iowa,

45. The evidence shows conversations between these parties, before and after the plaintiff became of age, with respect to his compensation. Defendants insist that plaintiff's evidence tends to and is relied upon as showing an agreement for a compensation to be paid when he came of age, that his cause of action thereon accrued at that time, and was therefore barred at the commencement of this action, July 10, 1895. They also contend that an agreement as to compensation to be therein made was entered into when the plaintiff came of age, and that, therefore, plaintiff's claim is not an open and continuous claim, and that all accruing prior to March 1, 1890, was barred by the statute of limitations. The evidence as to the conversations is as follows: Plaintiff says: "There was no real bargain made about pay in 1884, but Mr. and Mrs. Feeley told me that I should get a team and wagon and harness when I was of age, and then they again said they would give me also a piece of land. Didn't say what land they would give me,—forty or eighty acres. I expected them to do this. * * * No promise was made in 1885 about paying me for this work. * * * He said many a time, 'I don't want you to work for me for nothing, Frank; I will pay you for all you do,' and I relied upon his statements. At one time they told me they would buy a little farm called the 'Pulley Farm,' and would give me that,—about seventy acres. They didn't make me any promise before 1884. In the spring of 1890, when we was hauling hay, I told him I was twenty-one the fourth of that April. I told him I wanted to go to Missouri Valley to the machine shops. He offered to give me that land that was on the south side of the railroad tracks for what work I would do for two years for him; and I told him, 'Well, I don't care, I will have that much to fall back on.'" In another place he states that in that conversation Mr. Feeley "insisted on my staying;

and said, 'Frank, if you will stay with me two years, I will give you that strip of land on the other side of the railroad.' I said, 'That is hardly enough to keep a man busy, although it would be more than two.years' work was worth.' After he had insisted upon my staying so hard, I says, 'It's all right,' and there it was left." Mrs. Feeley testifies as follows: "Last winter we agreed that he had three hundred dollars after he was twenty-one. It was worth one hundred dollars a year to take care of him until he was fifteen years old. About the time he was fifteen he agreed with us that he was to receive his board and clothes and to stay until he was twenty-one, to pay for the five hundred dollars that it was worth to take care of him until he was fifteen. That was to be in satisfaction of the first five years. I never heard anything about giving him a team and harness when he was twenty-one. Never said anything of the kind. Never said anything about giving him forty or eighty acres of land when he came of age. There was no talk of that kind in the house in plaintiff's presence. When he was of age I told him he could do as he liked. He said he had to stay some place,—might as well stay with us as any place else. Told him he could stay for one hundred dollars a year and his board and clothes and tobacco. Never said anything to him about giving him the land south of the Rock Island road. Mr. Feeley testified as follows: "The agreement with Father Mac. and me and my wife was that he was to stay at our place until he was twenty-one years old. We were to give him clothes and board and schooling. After he was twenty-one the agreement was between the boy and my wife that he was to work for one hundred dollars a year and his board and clothes and tobacco. Kept him three years and ten months under that agreement. Never heard that I was to give him

the land between the railroad tracks. There was nothing said of that kind." Mr. Feeley further testifies: "He talked of going to Missouri Valley. I told him he could not earn his board there. That's all that was said. Didn't offer to give him any land if he would stay." We do not think that this evidence, nor that of the plaintiff, taken alone, shows an express agreement as to compensation before plaintiff attained his majority. They were just such assurances as it was natural should be given by way of encouragement to the boy to continue to serve the defendants faithfully and industriously. There were just such assurances as tend to prove the expectations of the parties with respect to compensation, and to disprove the presumption of gratuitous services. Defendants each testified to an agreement after plaintiff came of age, that he was to work for one hundred dollars a year and his board, clothes, and tobacco. If an agreement was then in fact made covering the further services, that agreement must control as to such services, and, in that event, plaintiff's claim would not be an open and continuous account up to the time that he says he worked for the defendants, and all that preceded the agreement was barred at the time this action was commenced. Now, while we think there was nothing in the evidence to break the continuity of plaintiff's claim up to the time that he came of age, if an agreement was made as testified to by defendants, then clearly it did not continue to the end of the services. In view of this claim and evidence of the defendants, the court should not have instructed that plaintiff's claim was not barred by the statute of limitations, but should have submitted the question whether the alleged agreement was made, and instructed that, if made, plaintiff's claim, prior to the time he attained his majority, was barred; but that, if

said agreement was not made, then no part of his claim was barred. For this error we think the judgment of the district court must be REVERSED.